UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY LOUISE JONES,

                           Plaintiff,

v.                                     3:15-CV-0429
                                     (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

APPEARANCES:                         OF COUNSEL:

LACHMAN, GORTON LAW FIRM         PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.         BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 12.)  This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by Mary Louise

Jones ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on February 4, 1964. (T. 147.) She received her GED. (T. 152.) Generally, Plaintiff's alleged disability consists of right arm injury, right knee injury, left hip injury, left kidney issue, "tumor in abdomen," and depression. (T. 150.) Her alleged disability onset date is August 16, 2008. (T. 147.) Her date last insured is December 31, 2014. (*Id.*) She previously worked as a developmental aid and bus monitor. (T. 152.)

### B. Procedural History

On September 16, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II. (T. 62.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On April 11, 2013, Plaintiff appeared before the ALJ, Bruce S. Fein. (T. 33-59.) On May 3, 2013, ALJ Fein issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-32.) On February 24, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 16-27.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014 and Plaintiff had not engaged in substantial gainful activity since August 16, 2008. (T. 16.) Second, the ALJ found that Plaintiff had the severe impairments of status post repair of lateral epicondylitis of the right elbow and mild carpal tunnel syndrome, bilateral degenerative joint disease of the knees and hips, lumbago, major depressive disorder, post-traumatic stress disorder, and poly-substance dependence in full and sustained remission. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 18-20.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 20.)[1] In addition, the ALJ determined that Plaintiff was able to occasionally climb ladders, ropes, and scaffolds, and she was able to frequently climb ramps and stairs as well as frequently balance, stoop, kneel, crouch, and crawl. (*Id.*) The ALJ determined that Plaintiff retained the ability to: understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others to the extent necessary to carry out simple tasks; and, handle reasonable levels of simple, repetitive work-related stress in that she could make decisions directly related to the performance of simple

---

[1]      Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

tasks in a position with consistent job duties that did not require her to supervise or manage the work of others. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-27.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes essentially four separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues substantial evidence did not support the ALJ's mental RFC determination. (Dkt. No. 10 at 9-14 [Pl.'s Mem. of Law].) Second, Plaintiff argues substantial evidence did not support the ALJ's physical RFC determination. (*Id.* at 14-17.) Third, Plaintiff argues the ALJ erred in affording great weight to a non-examining State agency medical examiner, Howard Bronstein, M.D. (*Id.* at 17-22.) Fourth, and lastly, Plaintiff argues the ALJ erred in affording reduced weight to the treating physician, Thomas Martin, D.O. and in affording "very little weight" to Lawrence Wiesner, D.O.. (*Id.* at 22- 24.)

### B.    Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ properly weighed the medical opinion evidence in formulating the RFC. (Dkt. No. 11 at 5-13 [Def.'s Mem. of Law].)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In

other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

Plaintiff's RFC is the most she can still do despite her limitations. 20 C.F.R. §
404.1545(a). In formulating Plaintiff's RFC, the ALJ will consider all the relevant
evidence in Plaintiff's case record. *Id.* at § 404.1545(a).

### A. Mental RFC

### i.) Treating Physician, Mafuzar Rahman, M.D.

The opinion of a treating source will be given controlling weight if it "is well
supported by medically acceptable clinical and laboratory diagnostic techniques and is
not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §
404.1527(c)(2); *Greek v. Colvin*, 802 F.3d 370 (2d Cir. 2015). But a treating physician's
opinion is not entitled to controlling weight when it is not supported by medically
acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other
evidence in the record. *Greek,* 802 F.3d at 375.

The following factors must be considered by the ALJ when deciding how much
weight the opinion should receive, even if the treating source is not given controlling
weight: "(i) the frequency of examination and the length, nature, and extent of the
treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's
consistency with the record as a whole; and (iv) whether the opinion is from a
specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his
reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR
96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.
2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received mental health treatment through Broome County Mental Health
Services. She received medical management and treatment from Mafuzar Rahman,

M.D. and talk therapy counseling from various licensed clinical social workers. On March 21, 2013, Dr. Rahman completed a medical source statement. (T. 534-536.)

In the area of concentration and persistence, Dr. Rahman opined that Plaintiff had "marked" limitations in her ability to: maintain attention and concentration for extended periods of time; perform activities within a schedule, maintain regular attendance and/or be punctual with in customary tolerances; and complete a normal work day and work week without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 534.)[2] He opined that Plaintiff had "medium" limitations in her ability to sustain ordinary routine without special supervision. (*Id.*)

In the area of interaction with others, Dr. Rahman opined Plaintiff had "medium" limitations in her ability to interact appropriately with the general public. (T. 535.) He opined that Plaintiff had "marked" limitations in her ability to: accept instructions and respond appropriately to criticism from supervisors and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. (*Id.*)

In the area of adaptation/stress, Dr. Rahman opined that Plaintiff had "marked" limitations in her ability to respond appropriately to ordinary stressors in the work setting and respond appropriately to changes in the work setting. (T. 535.) Dr. Rahman opined that Plaintiff's symptoms and treatment for her mental condition would reasonably be expected to cause two to three absences from work per month. (*Id.*) Dr. Rahman

---

[2] The form completed by Dr. Rahman defined "marked" as "there is a serious limitation in this area. There is a substantial loss in the ability to effectively function. The loss would be greater than 33%." (T. 534.) The form defined "medium" as "more than a slight but less [than] a serious limitations in this area. The individual is still able to function satisfactorily for [a] certain portion of the day and/or perform the tasks satisfactorily on some of the occasions. The approximate loss would be more than 20% for the particular activity but less than 1/3 of the day." (*Id.*)

stated that Plaintiff suffered from bipolar disorder and her mood had been mostly depressed, irritable, and dysphoric. (*Id.*) He stated her affect fluctuated, she was very impulsive "at times," and "unable to tolerate routine environmental stressors without reacting disproportionately." (*Id.*)

In formulating his mental RFC, the ALJ afforded Dr. Rahman's opinion "very little weight." (T. 24.) The ALJ reasoned that the opinion was inconsistent with the longitudinal medical evidence, inconsistent with Plaintiff's global assessment of functioning ("GAF") score of 55[3], and contradicted by his own treatment notes. (T. 24-25.)

The ALJ properly evaluated Dr. Rahman's opinion. First, the ALJ did not err in relying on Plaintiff's GAF score as one factor in his overall evaluation of the medical opinion evidence in the record. (T. 24.) The ALJ noted that a GAF score of 55 was inconsistent with the Dr. Rahman's conclusion that Plaintiff had certain "marked" limitations. (*Id.*) The ALJ did not reject the whole of Dr. Rahman's opinion based on Plaintiff's GAF score; therefore, the use of a GAF score, as one factor in an overall evaluation of a medical opinion, did not constitute error. *Johnson v. Astrue*, No. 1:10-CV-299, 2011 WL 6337788 (D. Vt. Dec. 16, 2011) ("Although GAF scores in and of themselves do not demonstrate that an impairment significantly interferes with a claimant's ability to work, they are "one factor" to consider in determining an individual's ability to perform substantial gainful activity."); *Leonard v. Comm'r of Soc. Sec.*, No.

---

[3]    "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue,* 546 F.3d 260, 262 n. 1 (2d Cir.2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed. 2000)). GAF scores between 51-60 indicates: "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, at 34 (4th ed. 2000.)

5:14-CV-1353, 2016 WL 3512219 (N.D.N.Y. June 22, 2016) ("the ALJ did not err in mentioning Plaintiff's GAF score as one factor his overall evaluation of the medical opinion evidence in the record").

Second, the ALJ did not "cherry pick" the record as Plaintiff contends. (Dkt. No. 10 at 9 [Pl.'s Mem. of Law].) To be sure, although the ALJ was entitled to resolve conflicts in the record, his discretion was not so wide as to permit him to pick and choose only evidence that supports a particular conclusion. *See Smith v. Bowen,* 687 F.Supp. 902, 904 (S.D.N.Y.1988) (citing *Fiorello v. Heckler,* 725 F.2d 174, 175–76 (2d Cir.1983)); *see also Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir.2011); *Robinson v. Barnhart,* 366 F.3d 1078, 1083 (10th Cir.2004). Here, the ALJ permissibly, and within his discretion, resolved conflicts in the record.

The ALJ reasoned that Dr. Rahman's opinion was inconsistent with his treatment notations. (T. 24-25.) Although the record contained notations describing Plaintiff as hyperactive, presenting in an agitated and animated manner, and losing track of the subject (T. 319), the record also contained notations from Dr. Rahman which indicated Plaintiff was making "significant progress," was "less symptomatic" and had "improved insight and judgment" (T. 489) which were inconsistent with the marked limitations in his medical source statement. For example, on June 20, 2011, Dr. Rahman noted that "[a]lthough improved [Plaintiff] still exhibits mild to moderate irritable hypomania. Attention-concentrations, abilities to think rationally has improved. Still circumstantial, mildly pressured with some flights of ideas. . . [i]nsight and judgment – intact." (T. 346.)

Elsewhere in the record, Dr. Rahman conducted mental status examinations which did not support the marked limitations he opined to in his medical source

statement.  On March 8, 2012, Dr. Rahman observed that Plaintiff still had occasional depressive symptoms, but noted her mood symptoms "improved significantly."  (T. 510.)  He noted that Plaintiff's attention, concentration, and short term memory appeared to be "poor."  (*Id.*)  Dr. Rahman noted that Plaintiff had no evidence of manic/hypomanic or psychotic symptoms.  (*Id.*)  A mental status examination indicated "no significant changes reported or observed" regarding Plaintiff's thought processes/orientation, thought content, motor activity and speech, behavior/functioning, and involuntary movements.  (T. 510-511.)  Plaintiff's insight and judgment were within normal limits.  (*Id.*)  Dr. Rahman noted at that time that Plaintiff had a "good response [and] significant progress towards goals and objectives."  (T. 511.)

On May 3, 2012, Dr. Rahman noted Plaintiff's mood symptoms were "somewhat better" and she was "less labile [and] less emotional."  (T. 503.)  He noted Plaintiff's thoughts were more organized and goal directed.  (*Id.*)  A mental status examination indicated "no significant changes reported or observed" regarding Plaintiff's thought processes/orientation, thought content, motor activity and speech, behavior/functioning, and involuntary movements.  (*Id.*)  Plaintiff's insight and judgment were all within normal limits.  (T. 503-504.)

On August 14, 2012, Dr. Rahman noted that Plaintiff's mood/affect was anxious, depressed, and tearful.  (T. 497.)  A mental status examination indicated "no significant changes reported or observed" regarding Plaintiff's thought processes/orientation, thought content, motor activity and speech, behavior/functioning, and involuntary movements.  (*Id.*)  Plaintiff's insight and judgment were within normal limits.  (T. 497-

498.)  He further noted at that time that Plaintiff was making "good progress towards objectives."  (T. 498.)

On October 11, 2012, Dr. Rahman observed during the session that Plaintiff was depressed and tearful due to feeling overwhelmed.  (T. 492.)  A mental status examination indicated "no significant changes reported or observed" regarding Plaintiff's thought processes/orientation, thought content, motor activity and speech, behavior/functioning, and involuntary movements.  (*Id.*)  He noted Plaintiff's insight and judgment were within normal limits.  (T. 492-493.)

On December 13, 2012, Dr. Rahman noted Plaintiff was "less emotional."  (T. 490.)  Dr. Rahman noted "no significant changes reported or observed" regarding Plaintiff's mood/affect, thought processes/orientation, thought content, motor activity and speech, behavior/functioning, and involuntary movements.  (*Id.*)  He also noted at that time that Plaintiff was making good progress.  (*Id.*)  On January 29, 2013, Dr. Rahman observed that Plaintiff's mood was still "up and down a lot but less intense and she is able to manage them better."  (T. 488.)  Dr. Rahman conducted a mental status examination and noted "no significant changes reported or observed" regarding Plaintiff's mood/affect, thought processes/orientation, thought content, motor activity and speech, behavior/functioning, and involuntary movements.  (*Id.*)  Plaintiff's insight and judgment were within normal limits.  (T. 488-489.)

The ALJ has the duty to resolve conflicts in the record.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  The ALJ did not err in reasoning that Dr. Rahman's medical source statement was inconsistent with his own treatment notations as outline

above.  Although Plaintiff cites to notations which indicated Plaintiff was symptomatic, substantial evidence supported the ALJ's weighing of Dr. Rahman's opinion.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

### ii.)    State Agency Sources

On December 12, 2011, Plaintiff underwent a consultative examination by Sarah Long, Ph.D.  (T. 362-365.)  Dr. Long performed a mental status examination and observed that Plaintiff was neat, well groomed, and made appropriate eye contact.  (T. 363.)  She noted Plaintiff's speech was fluent, clear, and with adequate receptive and expressive language.  (*Id.*)  Dr. Long noted Plaintiff was coherent and goal directed, she displayed a full range of appropriate affect in speech and thought content, and her mood was euthymic.  (*Id.*)  Dr. Long observed that Plaintiff did not provide the correct answer when asked to subtract three from twenty.  (*Id.*)  She noted that Plaintiff repeated three objects immediately and after five minutes, but could only repeat two of five digits backwards.  (T. 364.)  She observed that Plaintiff's cognitive functioning appeared to be average.  (*Id.*)

In a medical source statement, Dr. Long opined that Plaintiff was able to follow and understand simple directions and instructions and perform simple tasks

independently.  (T. 364.)  She also opined that Plaintiff was able to maintain attention and concentration and was able to maintain a regular schedule.  (*Id.*)  She opined that Plaintiff was able to learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and was capable of adequate stress management.  (*Id.*)

On December 19, 2011, Dr. Harding reviewed Plaintiff's medical file and completed a mental RFC assessment.  (T. 380-383.)  In the area of understanding and memory, he opined that Plaintiff was "not significantly limited" in her ability to remember locations and work-like procedures and to understand and remember very short and simple instructions.  (T. 380.)  He opined Plaintiff was "moderately limited" in her ability to understand and remember detailed instructions.  (*Id.*)

In the area of concentration and persistence, Dr. Harding opined Plaintiff was "not significantly limited" in her ability to: carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to make simple work-related decisions.  (T. 380-381.)  He opined that Plaintiff was "moderately limited" in her ability to: carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (*Id.*)

In the area of social interaction, Dr. Harding opined Plaintiff was "not significantly limited" in her ability to: ask simple questions or request assistance; get along with

coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (T. 381.) He opined Plaintiff was "moderately limited" in her ability to: interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors. (*Id.*)

In the area of adaptation, Dr. Harding opined Plaintiff was "not significantly limited" in her ability to: be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. (T. 381.) He opined Plaintiff was "moderately limited" in her ability to respond appropriately to changes in the work setting. (*Id.*) Dr. Harding stated that he based his opinions regarding Plaintiff's functional limitations on outpatient treatment records and mental status examinations, as well as, Dr. Long's examination and findings. (T. 382.)

Plaintiff argues the ALJ committed legal error in failing to assign a specific weight to the opinions of Drs. Long and Harding. (Dkt. No. 10 at 12 [Pl.'s Mem. of Law].) Contrary to Plaintiff's argument, the ALJ did assign weight to Drs. Long and Harding. The ALJ specifically stated that he gave "great weight to the reports completed by Dr. Long and Dr. Harding due to their programmatic expertise and the consistency of their opinions with the overall medical evidence." (T. 23.) Therefore, Plaintiff's argument that the ALJ committed error in failing to afford weight to the State agency examiners fails.[4]

---

[4] Of note, error to provide a medical source specific weight does not always constitute error. *Curtis v. Colvin*, 11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013) ("despite the lack of specific weight assigned to the opinions, the court is able to discern with ease the ALJ's reasoning, and his treatment of that evidence will not be disturbed").

Further, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

The Regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose "opinions may constitute substantial evidence in support of residual functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015), *adopting Report & Recommendation*, (rejecting similar "global objection to reliance on nonexamining medical advisers' opinions" by same plaintiffs' counsel)); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02-CCV-3561, 2004 WL 99935, at *9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

In sum, the ALJ properly analyzed and weighed the medical opinion evidence provided by Plaintiff's treating source, Dr. Rahman. Further the ALJ's mental RFC determination was supported by the medical source opinions of Drs. Long and Harding, as well as Dr. Rahman's objective mental status examinations and treatment notations.

**B.      Physical RFC**

Plaintiff essentially argues that the ALJ erred in weighing the medical evidence in the record and in formulating his physical RFC determination because none of the medical source statements supported a finding that Plaintiff could perform the demands of light work; and specifically, the record contained reaching limitations which the ALJ failed to consider.  (Dkt. No. 10 at 14-24 [Pl.'s Mem. of Law].)

For the reasons set forth below, the ALJ properly assessed the medical evidence in the record and his physical RFC determination was supported by substantial evidence.  In formulating his physical RFC, the ALJ relied on the opinions of the State agency medical sources, Mathew George, M.D. and Howard Bronstein, M.D.

On November 21, 2011, Dr. George conducted a consultative examination.  (T. 357-361.)  On examination he observed that Plaintiff had a normal gait, could walk on heels and toes, she declined to squat due to hip pain, she used no assistive devices, she was able to change for the exam without assistance, she was able to get on and off the exam table, and she was able to rise from a chair without difficulty.  (T. 359.)  He further observed on examination that Plaintiff's cervical, thoracic, and lumbar spine had full range of motion.  (T. 360.)  Dr. George observed that Plaintiff's upper extremities, hips, and lower extremities had full range of motion.  (*Id.*)  He noted that Plaintiff had no sensory deficits and had full strength in her upper and lower extremities.  (*Id.*)  Dr. George observed that Plaintiff's hand and finger dexterity were intact and she had full grip strength.  (*Id.*)  In a medical source statement, Dr. George opined that Plaintiff had "moderate limitations [for] prolonged standing, walking, squatting and kneeling.  No other physical limitations."  (T. 361.)

The ALJ afforded Dr. George's opinion "significant weight." (T. 23.) The ALJ reasoned that Dr. George had "programmatic expertise," his opinion was based on his physical examination of Plaintiff, and his opinion was relatively consistent with the overall medical evidence. (*Id.*) The ALJ acknowledged that although Dr. George's limitations were not "clearly specified into work-related functions" they "did not preclude work at the light exertional level." (*Id.*) The ALJ further reasoned that Dr. Bronstein's opinion, which was based in part on Dr. George's examination and opinion, did provide specific work-related functional limitations that Plaintiff was capable of light work. (T. 23-24.)

On April 11, 2012, Dr. Bronstein reviewed the medical evidence in the record, including Dr. George's consultative examination, and opined that Plaintiff was capable for performing the exertional demands of light work. (T. 403.) Dr. Bronstein opined that Plaintiff was capable of frequently performing postural limitations; however, she could only occasionally climb ladders, ropes, or scaffolds. (T. 404.) Dr. Bronstein opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (T. 405-406.) The ALJ afforded Dr. Bronstein's opinion "great weight" due to his "programmatic expertise," review of the record, and the opinion's consistency with the longitudinal medical evidence. (T. 23.)

On March 15, 2013, Plaintiff underwent an "independent medical examination" performed by Lawrence Wiesner, D.O. (T. 520-523.) Dr. Wiesner conducted a physical examination. He noted Plaintiff had full range of motion in her neck, right shoulder, and both elbows. (T. 521-522.) Dr. Wiesner observed the Plaintiff had decreased range of motion in her left shoulder. (T. 521.) He observed Plaintiff had mild Tinel's sign at the

medical epicondylar region of her right elbow in relationship to the ulnar nerve. (*Id.*) He noted Plaintiff had decreased range of motion in her lumbar spine. (T. 522.) Dr. Wiesner observed that she had full range of motion in her hips and full muscle strength in the lower extremities. (*Id.*)

In a medical source statement, Dr. Wiesner opined that Plaintiff was "unable to perform any lifting, pushing, pulling, carrying, reaching, climbing, squatting." (T. 522.) He then opined Plaintiff required a weight restriction of "10 pounds and not repetitively . . . [s]he should perform no repetitive motions with her right upper extremity." (*Id.*) Dr. Wiesner stated Plaintiff required a sit/stand option at will and she "require[d] sitting for prolonged periods and not perform standing for prolonged periods." (*Id.*)

Dr. Wiesner also completed a work capacities form in March of 2013. (T. 524-527.) Therein he opined Plaintiff could stand/walk less than two hours in an eight hour workday; sit less than two hours in an eight hour workday; sit or stand for five minutes before needing to change position; and must walk around every ten minutes. (T. 524.) Dr. Wiesner opined Plaintiff would require the opportunity to shift positions at will and lay down three times a day. (*Id.*) He opined she could rarely: twist; stoop (bend); crouch; reach with her left; and handle. (T. 525.) He opined she could occasionally reach with her right and occasionally finger. (*Id.*) Dr. Wiesner opined Plaintiff could frequently lift up to five pounds, occasionally lift up to twenty pounds, and rarely lift over twenty pounds. (*Id.*) The ALJ afforded Dr. Wiesner's opinion "very little weight." (T. 24.) The ALJ essentially reasoned that his opinion was not consistent with the overall medical evidence.

Plaintiff's primary care provider, Thomas Martin, D.O., completed a medical source statement on March 27, 2012. (T. 396-398.)[5] Therein he opined Plaintiff required "more than one 10 minute rest period per hour." (T. 396.) He opined that Plaintiff was not limited in her ability to sit. (*Id.*) He opined Plaintiff could not stand for two hours out of an eight hour workday. (T. 397.) He opined Plaintiff could occasionally lift up to ten pounds and should not lift over ten pounds. (*Id.*) The ALJ afforded Dr. Martin's opinion "reduced weight" because it was inconsistent with the medical evidence in the record, conflicted with clinical findings and objective medical evidence, conflicted with the opinions of Drs. George and Bronstein, and was not supported by an explanation. (T. 24.)

Plaintiff received care from Michael McClure, M.D. in relation to her worker's compensation claim regarding her right arm. (T. 466-481.) Plaintiff underwent surgery on her right elbow in April 2010 and in June 2010 she reported to Dr. McClure that she still experienced soreness in her wrist, but felt that fifty percent of her elbow pain was gone. (T. 470.) In June 2010, Dr. McClure indicated that Plaintiff should avoid "heavy repeated lifting," avoid lifting greater than twenty pounds, and avoid chronic repeated lifting with the arm. (*Id.*) On August 30, 2010, Dr. McClure opined Plaintiff should avoid lifting greater than twenty pounds and avoid "chronic repeated lifting with the arm." (T. 468.) On December 13, 2010, Dr. McClure indicated in his notations that a functional capacity examination recommended that Plaintiff was capable of full time work and

---

[5] The record indicated Plaintiff began seeing Dr. Martin in October of 2011. (T. 303.)

restricted to lifting thirty pounds maximum. (T. 466.)[6] The ALJ afforded Dr. McClure's statements "no weight." (T. 25.)

To be sure, Plaintiff's medical record regarding her physical limitations contained conflicting opinions. Resolution of conflicts in the record is the ALJ's responsibility. *Veino,* 312 F.3d at 588. Further, the Second Circuit has held that "[i]n our review, we defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

First, Plaintiff argues that the ALJ erred in his RFC determination because he failed to provide for any reaching limitations. (Dkt. No. 10 at 15-16 [Pl.'s Mem. of Law].) Plaintiff specifically argues the ALJ failed to account for Dr. McClure's opinion that Plaintiff should "avoid extension activities." (*Id.* at 15.) On January 8, 2009, prior to Plaintiff's surgery, Dr. McClure opined "at this time I recommend that she avoid extension activities." (T. 233.) Subsequent notations by Dr. McClure do not contain such limitations on extension activities. In December of 2010 Dr. McClure noted that a functional capacity examination recommended that Plaintiff was capable of full time work and restricted to lifting thirty pounds maximum. (T. 466.) Dr. McClure's December 2010 notation does not contain any additional restrictions. Further, as stated by the ALJ in his decision, Drs. George, Bronstein and Martin did not impose reaching limitations on Plaintiff. (T. 18.) Therefore, the ALJ did not err in his determination that Plaintiff did not have additional reaching limitations.

Second, Plaintiff argues that opinion evidence in the record did not support the exertional limitations of light work. (Dkt. No. 10 at 14-17 [Pl.'s Mem. of Law].) The

---

[6]       The record does not contain the functional capacity examination referred to by Dr. McClure.

evidence in the record contained conflicting opinions regarding Plaintiff's functional abilities. For example, regarding Plaintiff's ability to lift and carry, Dr. Wiesner opined she would be "unable to perform any lifting . . . carrying" yet in the next sentence stated "[w]eight restriction would be 10 pounds and not repetitively," but then opined Plaintiff could occasionally lift and carry up to twenty pounds. (T. 522, 525.) Dr. Martin opined Plaintiff could occasionally lift 10 pounds and should never lift more than 10 pounds. (T. 397.) Dr. McClure ultimately noted Plaintiff could lift thirty pounds maximum. (T. 466.) Dr. George indicated that Plaintiff had no lifting restrictions and Dr. Bronstein opined Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently. (T. 361, 403.)

Opinions regarding Plaintiff's ability to stand and walk also varied within the record. Dr. Wiesner opined Plaintiff could stand/walk less than two hours in an eight hour workday. (T. 524.) Elsewhere he opined Plaintiff should avoid "prolonged standing." (T. 522.) Dr. Martin opined Plaintiff could stand for less than two hours in an eight hour workday. (T. 397.) Dr. George stated Plaintiff had "moderate limitations" for "prolonged standing, walking." (T. 361.) Dr. Bronstein opined Plaintiff could stand and/or walk for about six hours in an eight hours workday with normal breaks. (T. 403.)

The ALJ ultimately resolved the conflicts in the record and relied primarily on the medical source opinions of Drs. George and Bronstein. In resolving the conflicts, the ALJ properly assessed the medical opinion evidence in the record in accordance with the Regulations at 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ reasoned that Dr. Wiesner's opinion was ultimately inconsistent with other opinion and objective evidence in the record, namely the opinions of Drs. George, Bronstein, and Martin. (T. 24.) The

ALJ also reasoned that Dr. Wiesner's opinion was inconsistent with his own examination of Plaintiff which indicated Plaintiff's sensation was intact, she had full muscle strength, full range of motion in her lower extremities and negative straight-leg raises. (*Id.*)  The ALJ also afforded Dr. Wiesner's opinion little weight due to his internal inconsistencies regarding Plaintiff's ability to lift. (*Id.*)  The ALJ reasoned Dr. Wiesner's medical source statement was a check-box form and not supported by any explanation. (*Id.*)  *See Camille v. Colvin*, No. 15-2087, 2016 WL 3391243, at *2 (2d Cir. June 15, 2016) (ALJ properly afforded limited weight to treating source who provided a check-box form, but no narrative).  The reasons supplied by the ALJ for affording Dr. Wiesner's opinion "very little weight" were good reasons, made in accordance with the Regulations, and supported by substantial evidence.

The ALJ properly evaluated the opinion evidence from Dr. Martin.  The ALJ reasoned that Dr. Martin's restrictions were inconsistent with clinical findings, objective medical evidence, and the opinions of Drs. George and Bronstein.  (T. 24.)  It appears from the record that Dr. Martin treated Plaintiff for the first time on October 10, 2011, for an ER follow up.  (T. 303.)  A physical examination at that time was normal.  (*Id.*)  Plaintiff typically received care from Thomas Burkert, RPAC.  (*Id.*)  Notations from Mr. Burkert indicated Plaintiff was treated for routine health maintenance, psychiatric care, insect bites, allergies, headaches, ear pain and TMJ.  (T. 305, 306, 307, 308.)  Concurrent physical examination performed by Mr. Burkert were normal.  (T. 305, 306, 307, 308.)  Treatment notations from Dr. Martin, and Mr. Burkert, were essentially normal and did not support the limitations imposed in the medical source statement.

Therefore, the ALJ did not err in affording Dr. Martin's medical source statement "reduced weight."

As stated herein, an ALJ is entitled to rely upon the opinions of examining and non-examining State agency medical consultants. *Baszto,* 700 F. Supp. 2d at 249.  Dr. George did not provide specific functional limitations in his medical source statement; however, his opinion was supported by his examination and incorporated by Dr. Bronstein who concluded Plaintiff was capable of performing light work.

Although a consultative examiner's opinion may use terminology that, on its face, is vague, such language does not render the consultative examiner's opinion useless in all situations. *Zongos v. Colvin*, No. 5:12-CV-1007, 2014 WL 788791, at *10 (N.D.N.Y. Feb. 25, 2014) ("[W]hether an [ALJ's] reliance on a consultative examiner's vague opinion is reversible error is contextual rather than *per se.* Reviewing courts must weigh the impart of vague opinion in its unique factual circumstance.").  Courts have held that terms such as "mild" and "moderate" pass substantial evidence muster when medical evidence shows relatively little physical impairment. *Waldau v. Astrue,* No. 5:11-CV-925, 2012 WL 6681262, at *4 (N.D.N.Y. Dec.21, 2003); *Walker v. Astrue,* No. 08-CV-0828, 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) (finding that where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment); *see Tolhurst v. Comm'r of Soc. Sec.*, No. 5:15-CV-0428, 2016 WL 2347910, at *5 (N.D.N.Y. May 4, 2016) (holding that a consultative examiner's opinion was too vague to support a finding that plaintiff could perform sedentary work because the ALJ determined, at step two, that plaintiff suffered from back disorders, knee

disorders, and Factor V Leiden; and therefore, plaintiff did not have relatively little physical impairments).

Further, courts have held that a consultative examiner's conclusion was not impermissibly vague where the conclusion was "well supported by his extensive examination." *Waldau*, 2012 WL 6681262, at *4; *Mauzy v. Colvin*, No. 5:12-CV-866, 2014 WL 582246, at *9 (N.D.N.Y. Feb. 13, 2014). Courts have also held that medical source statements from consultative examiners which provide vague language may be rendered "more concrete" by the facts in the underlying opinion and other opinion evidence in the record. *Davis v. Massanari*, No. 00-CV-4330, 2001 WL 1524495, at *8 (S.D.N.Y. Nov. 29, 2001) (a consultative examiner's opinion was not too vague where "the facts underlying that opinion and the other medical opinions in the record lend it a more concrete meaning"); *see Sweeting v. Colvin,* No. 12-CV-0917, 2013 WL 5652501, at *8 (N.D.N.Y. Oct. 15, 2013) (plaintiff's contention that consultative examiner's use of the term "moderate" in his opinion was vague lacked merit as consultative examiner made specific findings based on physical examination of plaintiff); *Melton v. Colvin*, No. 13-CV-6188, 2014 WL 1686827, at *13 (W.D.N.Y. Apr. 29, 2014) (substantial evidence supported ALJ's RFC determination that plaintiff could perform sedentary work were consultative examiner opined plaintiff had moderate limitations in lifting and carrying and other objective evidence in the record to supported this determination). Therefore, contrary to Plaintiff's argument, the opinion of consultative examiner Dr. George could constitute substantial evidence to support the ALJ's RFC determination. (Dkt. No. 10 at 16-17 [Pl.'s Mem. of Law].)

In sum, the ALJ properly weighed the medical opinion evidence in the record and his physical RFC determination was supported by substantial evidence in the record. In weighing opinion evidence, the ALJ adhered to the Regulations and further he was within his discretion to resolve the conflicts within the record. Although various doctor's opined that Plaintiff had greater restrictions, the ALJ properly concluded that those restrictions were not supported by treatment notations, objective medical evidence and other opinion evidence in the record. The ALJ's physical RFC determination was ultimately supported by the opinions of State agency examiners, Drs. George and Bronstein.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:        August 8, 2016

William B. Mitchell Carter
U.S. Magistrate Judge